UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| VANESSA BLEDSOE AND<br>MICHAEL BLEDSOE | CIVIL CASE NO. |
| VERSUS | 23-610-JWD-EWD |
| AMERICAN NATIONAL PROPERTY<br>AND CASUALTY COMPANY | |

**RULING AND ORDER**[1]

Before the Court is the Motion to Compel Appraisal, filed by Vanessa ("Vanessa") and Michael ("Michael") Bledsoe (collectively "Plaintiffs").[2] Because the request for appraisal is untimely, and Plaintiffs' property has been repaired, the Motion will be denied.

**I.  BACKGROUND**

Plaintiffs own residential property at 11172 N. Terrell Avenue, Gonzales, Louisiana. They allege that the property suffered damage on August 29, 2021 due to Hurricane Ida because a tree hit the home. At that time, the property was insured through a homeowner's insurance policy provided by Defendant American National Property and Casualty Company ("ANPAC"), which provided coverage for the dwelling/other structures, personal property, and loss of use.[3]  On or about August 31, 2021, Plaintiffs submitted a claim to ANPAC under the policy, and ANPAC's claim log reflects that Plaintiffs reported that the tree had already been removed and "first response" had been hired for repairs.[4]  On September 3, 2021, ANPAC inspected the property and

---

[1] *Duncan v. GeoVera Specialty Ins. Co.*, No. 21-22, 2021 WL 2376609, at *1, n.1 (S.D. Tex. June 10, 2021) ("A motion to compel appraisal is a non-dispositive motion, so a magistrate judge can issue an order instead of a memorandum and recommendation. *See PB Prop. Holdings, LLC v. Auto-Owners Ins. Co.*, No. 16-CV-1748-WJM-STV, 2017 WL 7726696, at *1 (D. Colo. Jan. 26, 2017) ("Plaintiff's motion to compel appraisal and stay litigation pending that appraisal is a nondispositive motion under Rule 72(a)."); *Kesic v. Am. Family Mut. Ins. Co.*, No. 2:15-CV-411, 2016 WL 10770865, at *3 (N.D. Ind. June 24, 2016) (A motion to compel appraisal "is nondispositive, so this court can resolve the motion" by order instead of memorandum and recommendation.)).
[2] R. Doc. 12.
[3] R. Doc. 1-1, ¶¶ 4-7, R. Doc. 12-1, p. 2.  *See also* the policy declaration pages noting the policy period of 11-6-20 to 11-6-21 at R. Doc. 17-4, p. 13; the policy at R. Doc. 17-8; and ANPAC's claim log at R. Doc. 17-5, p. 42 (noting that Plaintiff reported a tree hitting the home, which caused water damage).
[4] R. Doc. 1-1, ¶ 9, R. Doc. 12-1, p. 2, R. Doc. 17-5, p. 42 (claim log).

issued its initial inspection report on September 5, 2021.[5] ANPAC paid a total of $80,087.77 on the dwelling claim to Plaintiffs in a series of payments,[6] and ANPAC's claim log reflects that the last payment was made to Plaintiffs on November 2, 2021.[7] Plaintiffs allege that ANPAC also paid approximately $51,000 on their personal property claim.[8]

ANPAC's claim log reflects that Plaintiffs hired a contractor on December 14, 2021, and on February 1, 2022, Plaintiffs reported that "repairs have started at the property."[9] During Vanessa's examination under oath ("EOU"), she testified that most of the repairs were completed by February 2022.[10] However, ANPAC's claim log reflects that on April 6, 2022 ANPAC received a letter of representation from Plaintiffs' public adjuster, Complete Adjusting Services, LLC ("CAS"), who inspected the property in May 2022, according to Vanessa's EOU.[11] Through CAS, Plaintiffs submitted sworn proofs of loss for their contents on August 26, 2022 and for their dwelling on August 29, 2022.[12] At about this same time, Plaintiffs requested an extension of time for consideration of their claims from ANPAC via email, stating that "several items [were still] in dispute," "repairs to my home are still in process," and that CAS was preparing an estimate regarding "the unaddressed or non-satisfactory payments on covered damages."[13]

---

[5] R. Doc. 17, p. 3, and *see* R. Doc. 17-7 (ANPAC's initial inspection report).
[6] R. Doc. 12-1, p. 2, R. Doc. 17, p. 4, R. Doc. 17-5, p. 44 (claim log list of 3 payments). The Petition (and May 9, 2023 appraisal demand and the parties' Joint Status Report) alleges that ANPAC paid $90,898.76 on the dwelling/other structures claim but the parties' briefs agree and the claim log reflects that ANPAC paid $80,087.77. *Compare* R. Doc. 1-1, ¶ 9 (and R. Doc. 12-7, p. 2, and R. Doc. 18, p. 6) with R. Doc. 12-1, p. 2, R. Doc. 17, p. 4, R. Doc. 17-5, p. 44. The $10,810.99 difference appears to be recoverable depreciation. R. Doc. 12-4, p. 22 (September 21, 2021 revised ANPAC estimate).
[7] R. Doc. 12, p. 4 and R. Doc. 17-5, pp. 31-32, 44.
[8] R. Doc. 12-1, p. 4.
[9] R. Doc. 17-5, pp. 27-28, 30 (claim log).
[10] R. Doc. 17-2, pp. 23-24.
[11] *See* R. Doc. 17-5, p. 24 (claim log) and R. Doc. 17-2, p. 24 (testimony regarding CAS photographs of the home taken May 2, 2022).
[12] R. Docs. 12-5 and 12-6, and *see* R. Doc. 17-5, p. 16.
[13] R. Doc. 17-5, p. 15 ("Dwelling & Other Structures coverage: We ask for an extension on these coverages due to several items still being in dispute for the resolution of this claim. The repairs of my home are still in process, and not all damaged items have been paid for. My public adjuster, Complete Adjusting Services, is currently working on an estimate to be used as a supplemental estimate to the unaddressed or non-satisfactory payments on covered damage. We ask that an extension be extended until the differences in documented damages are resolved. Contents/Personal

The claim log notes that the damage Plaintiffs listed in their contents' proof of loss was inconsistent with ANPAC's initial inspection.[14] ANPAC re-inspected the property on October 17, 2022 and found that the roof, exterior bricks, and all interior work had been finished, and declined to change its estimate.[15] Plaintiffs' son also stated during the reinspection that many of the contents had been thrown away, except firearms.[16] A week after the reinspection, ANPAC retained counsel and sent a reservation of rights letter to Plaintiffs.[17]

As noted above, ANPAC conducted Plaintiffs' EOUs as permitted by the policy on May 8, 2023, at which Plaintiffs were represented by counsel.[18] Notably, Vanessa testified that most of the repairs to the home were completed in February 2022, *before* CAS's inspection of the home, which appears to contradict her August 2022 email statement that repairs were ongoing.[19] She also testified that many of the contents for which Plaintiffs seek recovery were still in use at the home, despite her son's statements during the reinspection and the contents' proof of loss.[20]

The day after Plaintiffs' EOUs, Plaintiffs, through counsel, invoked the appraisal process provided for in the policy.[21] On May 26, 2023, ANPAC denied the request for an appraisal primarily due to Plaintiffs' testimony that most of the repairs were complete prior to CAS's repair

---

Property: My public adjuster has sent in my contents spreadsheet with several items we have not been reimbursed for, with photos and receipts. We request an extension on this coverage be applied until the items that are in dispute are resolved.").

[14] R. Doc. 17-5, pp. 8, 12-13, 16.
[15] R. Doc. 17-5, pp. 6-9. The log also notes that some items were not approved and permits were not provided. *Id.*
[16] R. Doc. 17-5, p. 8.
[17] R. Doc. 17-5, pp. 5-6.
[18] R. Doc. 17-2 (Vanessa EOU transcript) and *see* the applicable policy provision at R. Doc. 17-8, p. 22.
[19] R. Doc. 17-2, p. 24 ("Q. So when CAS, your public adjuster, actually came out and inspected your house, all of that work had been done with the exception of missing caulking and painting, the bricks were replaced but they didn't match, and your AC hasn't been checked. A. I would believe so. Q. Okay. But all the other work had been done. A. If I remember correctly, I'm thinking so."); pp. 30-31 ("Q. …All right. And at the time [CAS] came out to do their initial inspection in May of 2022, other than what you just told me, the rest of the work had been done and those contractors had been paid? A. Yes. Of what ANPAC had put on."); pp. 35-36 (regarding Plaintiffs' proof of loss of the dwelling: "Q. But most of the stuff in this estimate, by the time this estimate was written, had already been done, right? A. (Nods head affirmatively).").
[20] *See* R. Doc. 17-2 at, *e.g.*, pp. 44-50 regarding the living room contents (sofa, recliner, electronics, wooden dressers, side tables, and television listed on proof of loss still in use at the home at the time of the EOU).
[21] R. Doc. 12-7 (May 9, 2023 letter of Plaintiffs' counsel's representation and demanding appraisal). *See also* the policy at R. Doc. 17-8, pp. 25-26.

3

estimates.[22]  Six days later, Plaintiffs filed their Petition for Damages and Expedited Motion to Compel Appraisal against ANPAC in Louisiana state court. ANPAC removed the case to this Court on July 23, 2023 on the basis of diversity subject matter jurisdiction.[23]  Plaintiffs seek a supplemental payment of $212,912 for dwelling/other structures and a supplemental payment of $55,871.05 for personal property.[24]  On September 18, 2023, Plaintiffs filed the instant Motion seeking to compel appraisal, which is opposed by ANPAC.[25]

**II.    LAW AND ANALYSIS**

ANPAC's policy provides, in pertinent part:

> Appraisal. If you and we fail to agree on the amount of loss, either one can request that the amount of the loss be set by appraisal. If both parties agree to an appraisal, each shall select a competent independent appraiser, and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent impartial umpire….[26]

The appraisal provision, which is not challenged by either party, is valid and enforceable. "Courts have consistently held that appraisal provisions in insurance policies are enforceable."[27] "There is no dispute that such a provision is enforceable."[28]  The central question for the Court is whether the appraisal process is still available to Plaintiffs.

"The terms of the policy provide for implementation of the appraisal process should its terms be met."  However, appraisal can be waived if a party acts in a manner that is "inconsistent

---

[22] R. Doc. 17-3 (May 26, 2023 ANPAC response to appraisal demand).
[23] R. Docs. 1 and 12-2.  The Notice of Removal adequately alleges that Plaintiffs are citizens of Louisiana who are diverse from ANPAC, a corporation with its place of incorporation and principal place of business in Missouri, and that the amount in controversy is facially apparent from the Petition, which alleges $202,101.01 in property damage, as well as attorney's fees and statutory penalties. R. Doc. 1, ¶¶ 2, 6-7 and R. Doc. 1-1, p. 7, ¶¶ 11, 33.
[24] R. Doc. 12-1, pp. 3-4. Plaintiffs also seek $3,346.16 in additional living expenses.  R. Doc. 12-1, p. 4.
[25] R. Docs. 12, 17.
[26] R. Doc. 17-8, p. 25 (¶19).
[27] *Davis v. Safeco Ins. Co. of Am.,* No. 13-677, 2014 WL 3939809, at *4 (M.D. La. Aug. 12, 2014) (internal citations omitted).
[28] *Marquette v. S. Fid. Ins. Co.,* No. 14-2311, 2015 WL 13529953, at *3 (E.D. La. May 19, 2015) citing *e.g.*, *Beasley v. GeoVera Specialty Ins. Co.*, No. 13–0395, 2013 WL 3187289, at *2 (E.D. La. June 20, 2013) (citations omitted).

4

with invocation of the provision."[29] "The most frequent situation in which such a waiver occurs is where the party moving to compel appraisal has delayed making such a request for a lengthy period. Where the appraisal provision does not mention a specific time period in which invocation must be made, as is the case here, an appraisal must be demanded within a 'reasonable time after a dispute as to the amount of loss arises.'"[30] This raises two questions: 1. When do the courts consider that "a dispute as to the amount of loss" has arisen? and 2. What is a reasonable time after such a dispute has arisen for one to demand appraisal?[31]

To determine the first question, courts look at whether and when "the insurer 'had sufficient information to act on the claim, either by compensating plaintiffs under the policy or disputing the claim via the appraisal process.'"[32] "There is no formulaic approach to determine what qualifies as sufficient information."[33] As explained in *Marquette*, courts have found that "sufficient information" was provided by a satisfactory proof loss, even if not precisely compliant with the insurer's demands; a demand to fund a settlement; a plaintiff's inventory list; a repair estimate from the plaintiff's contractor; and the filing of a complaint alleging that the insurer's payments were insufficient and inadequate.[34]

---

[29] *Marquette,* 2015 WL 13529953, at *3 citing *Dwyer v. Fidelity Nat. Prop. and Cas. Ins. Co*, 565 F.3d 284, 287 (5th Cir. 2009).
[30] *Marquette*, 2015 WL 13529953, at *3 citing *Triple K, Inc. v. Century Sur. Co.*, No. 10–1236, 2010 WL 3418237, at *2 (E.D. La. Aug. 23, 2010) (citing *Newman v. Lexington Ins. Co.*, No. 06–4668, 2007 WL 1063578, at *4 (E.D. La. April 4, 2007)) and *see Davis v. Safeco Ins. Co. of Am.,* 2014 WL 3939809, at *4. the same principles have been applied when insureds seek to compel appraisal. *See, e.g., Hayes v. S. Fid. Ins. Co.,* No. CV 14-376, 2014 WL 12722437, at *2 (E.D. La. Apr. 25, 2014) (denying insured's motion to compel appraisal as untimely).
[31] *See Marquette,* 2015 WL 13529953, at *3.
[32] *Id*., citing *Nguyen v. St. Paul Travelers Ins. Co*., No. 06-4130, 2007 WL 1672504, at *4 (E.D. La. June 6, 2007).
[33] *Id.*
[34] *Marquette,* 2015 WL 13529953, at *3 citing *Nguyen,* 2007 WL 1672504, at *4; *Davis,* 2014 WL 3939809, at *6; *Beasley,* 2013 WL 3187289, at *2; *Triple K, Inc.*, 2010 WL 3418237 at *2; *Dwyer,* 565 F.3d at 288; and *Newman,* 2007 WL 1063578, at *4.

ANPAC argues that the appraisal demand is untimely.[35] The Court agrees. It could be credibly argued that Plaintiffs were aware of sufficient information to invoke appraisal by at least August 2022, which is when they requested an extension from ANPAC for consideration of their claim, specifically referencing a dispute between the parties, and when they submitted their proofs of loss, which has been recognized by this Court as "sufficient information" (although appraisal at this point would have been pointless, as the repairs were already completed, as discussed *below*).[36] However, the latest that Plaintiffs were apprised of sufficient information to invoke appraisal was certainly after ANPAC's reinspection of the property in late October 2022, after which ANPAC declined to change its repair estimate to make any additional payments notwithstanding the proofs of loss.

Turning to the second question, Plaintiffs' May 9, 2023 demand for an appraisal, eight months after submission of the proofs of loss, and 6 months after the reinspection, was untimely. As this Court held in *Davis*:

> In determining what constitutes a reasonable time period, courts have considered the Louisiana Supreme Court's holding in *W.P. Sevier v. United States Fid. & Guar. Co…* In *Sevier,* the court held that an insurer's failure to demand appraisal within 60 days of receipt of satisfactory proof of loss rendered the demand untimely and thus the plaintiff did not have to submit to the appraisal process…. *See Nguyen,* 2007 WL 1672504, at *3 (request made four months after receiving sufficient proof of loss was untimely)….[37]

---

[35] R. Doc. 17, pp. 1-2, 13-15. Plaintiff did not file a reply and did not address the timeliness of the appraisal demand. Rather, Plaintiffs' Motion primarily argues that appraisal should not be denied just because appraisal may opine as to causation, *see* R. Doc. 12-1, pp. 5-6. However, that issue is not reached because Plaintiffs' demand was untimely.

[36] Plaintiffs seem to acknowledge sufficient information was provided by August 2022: "As per the August 29, 2022 submission of the Plaintiffs' Proof of Loss and Xactimate Assessment, ANPAC was fully apprised by written itemization as to the specific dispute regarding the amounts in dispute for the proper damages arising from Hurricane Ida." R. Doc. 12-1, p. 3.

[37] *Davis,* 2014 WL 3939809, at *6, citing 497 So.2d 1380, 1384 (La. 1986) and citing *Triple K, Inc.,* 2010 WL 3418237, at *3 ("applying *Sevier* and utilizing the 30 day "Loss Payment" provision applicable under the policy. Because the appraisal demand was made four months after proof of loss, it was untimely and unenforceable").

*See also Marquette*, holding that a demand for appraisal that was lodged more than six months after the insurer's receipt of the plaintiff's appraiser's estimate was untimely.[38] Because Plaintiffs' request for an appraisal is untimely, the Motion will be denied.[39]

## III. CONCLUSION

Plaintiffs' demand for appraisal was untimely made, and appraisal at this time would be pointless because Plaintiffs admit that their property has been repaired.

Accordingly,

**IT IS ORDERED** that the Motion to Compel Appraisal filed by Plaintiffs Vanessa and Michael Bledsoe is **DENIED**.[40]

Signed in Baton Rouge, Louisiana, May 7, 2024.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[38] *Marquette,* 2015 WL 13529953, at *4 citing *Davis*, 2014 WL 3939809, at *6 (finding a delay of "over four months ... unreasonable"); *Nguyen*, 2007 WL 1672504, at *4 (finding a "request for appraisal ... approximately four months after sufficient proof of loss ... was untimely); *contra Beasley*, 2013 WL 3187289, at *3 (finding that the insurer's "nine-day delay before invoking the appraisal provision was reasonable"); and *Newman*, 2007 WL 1063578, at *4 (finding a two month delay to be reasonable). *See also Armendariz v. S. Fid. Ins. Co.,* No. 20-2151, 2021 WL 4033319, at *3 (E.D. La. Aug. 16, 2021) ("The courts generally find a period of 4 months or more to be an unreasonable delay absent some exception, while a period of two months or less is reasonable.").

[39] Appraisal is also not available as to the dwelling since repairs were completed before the appraisal process was invoked. Vanessa testified that the repairs to the dwelling were complete by February 2022, except for some painting, caulking, and mis-matched bricks. R. Doc. 17-2, pp. 24-25, 30-31, 34-36, 92. Therefore, by Vanessa's own testimony, there was no appreciable damage to the dwelling left to be appraised by February 2022. "Damages may be predicated on estimation only when the loss has not been repaired. If the damaged property has been restored to its former condition by repair, the proper basis for assessing the damage is the repair bill." *LeJeune,* No. 22-107, 2023 WL 5670303, at *1 (W.D. La. July 27, 2023), citing *Volkswagen of Am. Inc. v. Robertson*, 713 F.2d 1151, 1169 (5th Cir. 1983) (quoting *Lambert v. Allstate Ins. Co.*, 195 So.2d 698, 700 (La. App. 1 Cir. 1967)). *See also Sanders v. Aegis Sec. Ins. Co.,* No. 09-1126, 2010 WL 3720911, at *2 (E.D. La. Sept. 10, 2010) ("At the hearing, Aegis alleged, and the Sanders conceded, that construction on the home was completed in 2008. Therefore, the proper basis for assessing the damage sustained to the home is not the estimated damages, but the actual cost of repairs.").

[40] R. Doc. 12.